**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
:
WILDER CRUZ, :
:
Petitioner, : No. 18-CV-9948 (GBD) (OTW)
:
-against- : **OPINION AND ORDER**
:
THOMAS DECKER, et al., :
:
Respondent. :
:
-----------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

I. **Introduction**

Petitioner Wilder Cruz, a 44-year-old lawful permanent resident of the United States, has been detained at the Hudson County Correctional Center ("HCCC") pursuant to 8 U.S.C. § 1226(c) since October 10, 2017. Petition ("Pet.") ¶ 2. On October 29, 2018, Mr. Cruz filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 for an order either releasing him from detention or requiring that he be provided a bond hearing before an immigration judge ("IJ"). (ECF 1). Petitioner named as respondents in their official capacities Thomas Decker, Field Office Director of the New York City Field Office for U.S. Immigration & Customs Enforcement ("ICE"); James McHenry, Director of the Executive Office for Immigration Review; Kirstjen Nielsen, then Secretary of the Department of Homeland Security; and Jefferson B. Sessions, then Attorney General of the Department of Justice. Pet. ¶¶ 9-12.

On November 8, 2018, Respondents filed their motion to dismiss or transfer, arguing that the warden of HCCC, located in Kearney, New Jersey, was the only proper respondent under the "immediate custodian rule" articulated in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004),

and thus this case should be dismissed or transferred to the District of New Jersey. (ECF 10). The motion was fully briefed by November 26, 2018, but the case was stayed on December 27, 2018 due to the lapse of funding to the United States Department of Justice. (ECF 13, 14). After funding was restored and the stay was lifted, I held a status conference on February 22, 2019, to discuss whether I had the authority to issue an opinion and order on the instant motion. The parties then submitted supplemental briefing on that limited issue. (ECF 23, 24). I also permitted the Immigrant Defense Project to submit an amicus brief, upon the parties' consent. (ECF 37). Respondents submitted their response to the amicus brief on April 16, 2019, ECF 45, and this Court held oral argument on Respondents' motion on April 30, 2019.

In order to move the case forward, I also directed the parties to proceed to brief the merits of the habeas petition. (ECF 25). After denying Respondents' motion to stay briefing on the merits, the merits briefing was completed on April 5, 2019.

## II.     Analysis

### A. This Court's Authority

A district judge may "designate a magistrate judge to hear and determine any pretrial matter pending before the court," with certain exceptions identified in 28 U.S.C. § 636(b)(1)(A). For the exceptions listed — in this case, a motion "to involuntarily dismiss an action" — 28 U.S.C. § 636(b)(1)(B) provides that the magistrate judge may "conduct hearings, including evidentiary hearings," and submit to the district judge proposed findings of fact and recommendations for disposition. The question here is whether Respondents' motion to dismiss or transfer is a dispositive motion "to involuntarily dismiss an action" under § 636(b)(1)(A).

The Second Circuit acknowledged that "the dispositive orders listed explicitly in § 636(b)(1)(A) [are] . . . to be non-exhaustive." *Williams v. Beemiller*, *Inc.*, 527 F.3d 259, 265 (2d Cir. 2008). Agreeing with the Third, Sixth and Tenth Circuits, the Second Circuit in *Williams* found that §636's intent was to avoid "vest[ing] the power in a non-Article III judge to determine the fundamental question of whether a case could proceed in a federal court." *Id*. at 265-66 (quoting *In re U.S. Healthcare,* 159 F.3d 142, 146 (3d Cir. 1998)).

Petitioner asserts that the basis of Respondents' motion is whether the Southern District of New York or the District of New Jersey is the "proper" forum, meaning a decision on Respondents' motion does not implicate the constitutional concerns identified in *Williams* because the parties agree that Petitioner's petition must be adjudicated in federal court. (ECF 23 at 1-2). Respondents argue that the Southern District of New York is an "improper venue" for Petitioner's habeas petition,[1] citing to *Padilla* to compel a transfer to the District of New Jersey. But *Padilla* held that its test of jurisdiction under the habeas statutes involves identifying the proper respondent and then determining whether that district has jurisdiction over the respondent. *Padilla*, 542 U.S. at 434. Further, the Supreme Court in *Padilla* explicitly stated that jurisdiction under § 2241(a) is "not in the sense of subject-matter jurisdiction of the District Court." *Id.* at 434 n. 7.

---

[1] Notwithstanding repeated references to "improper venue," Respondents do not move to dismiss or transfer under either 28 U.S.C. § 1404(a) or § 1406(a). Instead, they rely on 28 U.S.C. § 1631, which states only that a court "shall" transfer a case if the court finds that "there is a want of jurisdiction" and in the interests of justice.

Justice Kennedy's concurrence in *Padilla* further clarifies that Respondents' motion is best viewed as a question of venue or personal jurisdiction:

> [W]hen an action is brought in the district court, it must be filed in the district court whose territorial jurisdiction includes the place where the custodian is located.
>
> These rules, however, are not jurisdictional in the sense of a limitation on subject-matter jurisdiction. *That much is clear from the many cases in which [habeas] petitions have been heard on the merits despite their noncompliance with either one or both of the rules*. In my view, the question of the proper location for a habeas petition is best understood as a question of personal jurisdiction or venue.

*Id.* at 451 (emphases added) (internal citations omitted).

Accordingly, courts have found that *Padilla*'s "immediate custodian rule is a venue rule." *See Mahmood v. Nielsen*, 312 F. Supp.3d 417, 423 (S.D.N.Y. 2018) (noting that *Padilla* is "about the forum where a petitioner can bring a habeas claim—that is, the appropriate venue for the lawsuit"); *see also You v. Nielsen*, 321 F. Supp.3d 451, 461 (S.D.N.Y. 2018) (treating *Padilla* as a venue rule and finding venue proper in the Southern District of New York); *Calderon v. Sessions*, 330 F. Supp.3d 944, 953 (S.D.N.Y. 2018) (analyzing the proper immigration habeas respondent under "venue" rather than subject-matter jurisdiction); *Campbell v. Ganter*, 353 F. Supp.2d 332, 337 (E.D.N.Y. 2004) (viewing challenge of jurisdiction under *Padilla* to hear habeas petition as "a question of personal jurisdiction and venue").

Venue motions filed in other civil cases, *i.e.*, under § 1404(a) (forum non conveniens) or § 1406(a) (improper venue), have been treated as non-dispositive motions that can be decided by a magistrate judge. (*See* ECF 23 at n. 2 (collecting cases)). Because the parties agree that the only issue in the Respondents' motion to dismiss or transfer is the location of the federal court

4

that should hear Petitioner's petition, I find that the instant motion is non-dispositive as it does not address "the fundamental question of whether a case could proceed in a federal court." *Williams*, 527 F.3d at 266.

### B. Under *Padilla*, ICE Director Decker is a Proper Respondent

The federal habeas statute identifies the proper respondent(s) to a habeas petition as "the person who has custody over him." *See* 28 U.S.C. § 2242; *see also Padilla*, 542 U.S. at 435 (describing the respondent as one "with the power to produce the body of such party before the court or judge"). Respondents assert that under the *Padilla* analysis, Petitioner's "immediate custodian" is the warden of HCCC, where he has been detained since his arrest. (ECF 10 at 12). As a result, Respondents argue, the District of New Jersey is the only forum where the current petition may be brought. This Court disagrees.

Although *Padilla* applies the "default rule . . . that the proper respondent is the warden of the facility where the prisoner is being held," the Supreme Court has expressly left open the question of the proper custodian as it relates to immigration matters. *See id.* at 435-36 & n. 8. Indeed, footnote 8 in *Padilla* explicitly references the Second Circuit's analysis in *Henderson v. INS*, 157 F.3d 106 (2d Cir. 1998). In *Henderson*, the Second Circuit addressed the question of the proper "custodian" in the immigration context, noting that "[h]istorically, the question of who is 'the custodian,' and therefore the appropriate respondent in a habeas suit, depends primarily on who has power over the petitioner and, as we will discuss below, on the convenience of the parties and the court."[2] *Id.* at 122.

---

[2] Indeed, the Second Circuit's reference to "convenience of the parties and the court" further supports a conclusion that Respondents' motion concerns venue and thus is non-dispositive. *See Henderson*, 157 F. 3d at 122.

5

Petitioner is being held by the federal government at a state penal institution, pursuant to a contract with the U.S. Immigration & Naturalization Service, in immigration detention under 8 U.S.C. § 1226(c). Applying the reasoning of *Henderson* here, the named federal respondents are properly named because they exercise control over Petitioner. *See Farez-Espinosa v. Chertoff*, 600 F. Supp.2d 488, 495 (S.D.N.Y. 2009) ("Because Farez-Espinosa is being held by the Government – *i.e.*, the Attorney General and DHS – and not the warden of the prison in which Farez-Espinosa currently is detained, I find that Respondents Secretary Chertoff and Attorney General Mukasey are properly named in the instant petition."); s*ee also Rodriguez Sanchez v. Decker*, 18-CV-8798 (AJN), ECF 33 at 7 (S.D.N.Y. Aug. 15, 2019); *Matias Madera v. Decker*, 18-CV-7314 (AKH), ECF 30 at 5 (S.D.N.Y. Sep. 28, 2018) (adopting rule in *Calderon v. Sessions* "that the ICE District Director is the proper respondent even in a core habeas challenge").

As courts in this District have repeatedly recognized, in cases where a petitioner is detained in a non-federal facility pursuant to "the power and authority of the federal government" and under a contract with the federal government, the proper respondent is "the federal official 'with the most immediate control' over that facility." *See Rodriguez Sanchez*, ECF 33 at 4-5 (J. Nathan) (quoting *Saravia v. Sessions*, 280 F. Supp.3d 1168, 1185 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)); *see also Matias Madera,* ECF 30 at 7 (J. Hellerstein) (finding Respondent Decker is the only one who can "order the release of Petitioner"); *You*, 321 F. Supp.3d at 461 (J. Torres) (finding venue proper in district of ICE custodian rather than district of state jail that "rents bed space to ICE"); *Calderon*, 330 F. Supp. at 953 (J. Crotty) (finding the ICE-contracted warden "has no literal power to

6

produce the petitioner"). As clarified by Judge Nathan, this reasoning is consistent with *Padilla* and "does *not* amount to an adoption of the 'legal reality of control' standard rejected by the Supreme Court in *Padilla*." *Rodriguez Sanchez*, ECF 33 at 5.

### C. Specific Factual Findings

Petitioner here has proffered sufficient evidence to support a finding that ICE is not only his legal custodian, but also his immediate custodian under *Padilla*.[3] *See* Apr. 30, 2019 Oral Arg. Tr. (ECF 47) at 26-33 (referencing OIG report, federal standards, ISGA, HCCC ICE detainee handbook, and deportation officer communications). Although Respondents argue that the HCCC warden, and only the HCCC warden, exercises the requisite "immediate physical day-to-day control" over ICE detainees at HCCC, Apr. 30, 2019 Oral Arg. Tr. at 26, the additional evidence proffered by Petitioner supports a finding that ICE, whether solely or in conjunction with the warden, exercises that control to an extent that satisfies the immediate custodian rule under *Padilla*.[4]

For example, ICE has the sole authority to move detainees from one state facility to another, and notes in correspondence with detainees' counsel, "Your clients [sic] jurisdiction remains with this Office." (ECF 23-1). The ICE detainee handbook similarly suggests a much more involved role than purely legal custody. *See* ECF 23-2 at 1, 2, 4-5, *et seq*. The material in

---

[3] At the April 30, 2019 oral argument, upon questioning by the Court, Petitioner asserted that there could be multiple proper respondents. Apr. 30, 2019 Oral Arg. Tr. at 33:8-16. The Government asserted that the warden of the state facility was the only proper respondent under *Padilla*. *Id*. at 26-27. Because I find that Respondent Decker is an immediate custodian (and thus a proper respondent) under *Padilla*, and thus venue is proper in this District, I need not reach the issue of whether there may be other proper respondents.

[4] Courts in this District have already found that when using state-contracted facilities, ICE could be considered the legal custodian or the immediate custodian. *See Rodriguez Sanchez,* ECF 33 at 6-7 (applying the immediate custodian rule to find Respondent Decker "the federal official with the most immediate control over the non-federal facility"); *Matias Madera*, ECF 30 at 5-7 (applying the legal custodian rule to find that "[e]ffectively, the warden on these facts is acting as an agent of the ICE regional director").

the handbook "has been reviewed and approved by" Ronald Edwards, Director; Thomas Decker, ICE – New York NY; and John Tsoukaris, Director, ICE – Newark NJ. (ECF 23-2 at 1). On the second page of the 38-page handbook, it states:

> THE HUDSON COUNTY DEPARTMENT OF CORRECTIONS & REHABILITATION IS UNDER CONTRACT WITH US IMMIGRATION AND CUSTOMS ENFORCEMENT TO PROVIDE YOU WITH FOOD, CLOTHING, AND HOUSING **WHILE YOU ARE IN ICE CUSTODY**.
> YOU ARE IN CIVIL DETENTION, AWAITING A HEARING BEFORE AN IMMIGRATION JUDGE, AND/OR PENDING REPATRIATION. THIS HANDBOOK CONTAINS ESSENTIAL INFORMATON RELATING TO THE VARIOUS ASPECTS OF YOUR RESPONSIBILITIES, RIGHTS, AND PRIVILEGES. THEREFORE, YOU SHOULD READ THIS HANDBOOK IN ITS ENTIRETY. **IT IS RECOMMENDED THAT YOU CONTACT AN IMMIGRATION OFFICER TO RESOLVE QUESTIONS CONCERNING INFORMATION DISCUSSED IN THIS HANDBOOK.** ALL DETAINEES ARE RESPONSIBLE TO KNOW AND ABIDE BY THE INFORMATION IN THIS HANDBOOK.

*Id*. (emphases added).

The rest of the handbook refers detainees repeatedly to "ICE Liaison officers" and "ICE officers" who are physically present in the detainee housing units for at least a few days per week. *Id.* at 3, 4-5. In addition, ICE exercises control over the detainees' use of the facilities. For example, legal research can be conducted "only" on "ICE computers," *id.* at § J; detainees who wish to work "to perform tasks associated with the operation of the facility" "outside the unit"[5]

---

[5] The language in the section entitled "WORK PROGRAM" suggests that detainees may work either within the detainee unit or outside, but that work outside the unit is still controlled by ICE:

> Detainees can volunteer to perform tasks associated with the operation of the facility. Such tasks may include general sanitation, working on food service, and other tasks. All work <u>outside</u> the unit is on a voluntary basis. Any detainee working outside the unit will be issued and required to wear a white uniform during his detail. Eligibility will be determined by ICE who will prepare a volunteer worker list of detainees who have medical clearance. ICE will refer these detainees to H.C.D.O.C.&R. for work. All volunteer detainee workers will be paid $1.00 per day for their services. Detainees may sign up at any time by submitting a request to ICE.

must be first determined by ICE to be eligible for work and then referred by ICE "to H.C.D.O.C.&R. [Hudson County Department of Corrections & Rehabilitation] for work," *id*. at § Q; and information requests, grievances, claims, and relevant appeals are made to ICE or an "ICE officer." *See, e.g., id*. §§ B, E, U, V, W, X, AA, BB, II, H, I,[6] OO.

The last section of the handbook addresses sexual assault and other misconduct, and begins, "**THIS FACILITY HAS A ZERO TOLERANCE POLICY ON SEXUAL ASSAULT**." *Id*. at 33. In all sections that discuss reporting, the detainees are permitted to choose whether to report to HCCC staff or any level of ICE personnel.[7] No matter who gets first notice of the assault, however, "ICE and/or appropriate law enforcement agency [sic]" will be notified and will conduct an investigation. *Id*. at 35.

These additional facts show that ICE retains control of the detainees at HCCC and asserts sufficient "immediate, physical day-to-day control" over its detainees to find that ICE is Petitioner's immediate custodian under the rule articulated in *Padilla*. Accordingly, as the Director of the ICE New York Field office which exercises control over Petitioner's detention, Pet. ¶ 9, Respondent Decker is the proper respondent, and venue is proper in this District.

---

*Id*. § Q.

[6] There are two subsections labeled "H" and "I" that appear between sections "II" and "JJ" that relate to detainee property.

[7] "**While detained by the Department of Homeland Security, Immigration and Customs Enforcement, Office of Enforcement and Removal, you have a right to be safe and free from sexual harassment and sexual assault.**

**Report all attempted assaults and assaults to your housing unit officer, a supervisor, the [ICE] Officer in Charge, or directly to the Office of the Inspector General . . . .**" (ECF 23-2 at 36).

III. **Conclusion**

For the foregoing reasons, Respondents' motion to dismiss or transfer is **DENIED** in its entirety, with the parties to meet and confer and inform the Court, by **September 6, 2019**, whether any individual respondents can be dismissed on consent of the parties. If the parties cannot agree on whether a particular respondent should be dismissed, they should provide a proposed briefing schedule.

Dated: August 27, 2019
New York, New York

*s/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge