USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: NOV 2 6 2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

WILDER CRUZ,

                           Petitioner,

         -against-

THOMAS DECKER, *as Field Office Director, New York City Field Office, U.S. Immigration & Customs Enforcement*; JAMES MCHENRY, *as Director of the Executive Office for Immigration Review*; KIRSTJEN NIELSEN, *as Secretary, U.S. Department of Homeland Security*; and JEFFERSON B. SESSIONS, *as Attorney General, U.S. Department of Justice*,

                           Respondents.

------------------------------------- x

MEMORANDUM DECISION
AND ORDER

18 Civ. 9948 (GBD) (OTW)

GEORGE B. DANIELS, United States District Judge:

Petitioner Wilder Cruz seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, requesting that this Court order Respondents to release him on his own recognizance or provide him with a bond hearing before a neutral arbitrator. (Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Pet."), ECF No. 2, ¶ 106.) The matter was referred to Magistrate Judge Ona T. Wang on November 2, 2018. (Order of Reference to a Magistrate Judge, ECF No. 6.) On November 8, 2018, Respondents filed a motion to dismiss or, alternatively, to transfer venue to the District of New Jersey. (Notice of Mot., ECF No. 9; *see also* Resp'ts' Mem. of Law in Supp. of its Mot. to Dismiss or to Transfer the Case to the District of New Jersey ("Mem. in Supp."), ECF No. 10.)

Before this Court is Magistrate Judge Wang's August 27, 2019 Opinion and Order, denying Respondents' motion to dismiss and to transfer. (Opinion and Order ("Opinion"), ECF No. 53, at 10.) Respondents filed a motion to set aside the Opinion on September 6, 2019 (Notice of Resp'ts'

Rule 72 Objs. to and Mot. to Set Aside Magistrate Judge Wang's August 27, 2019 Op. & Order (ECF No. 53), ECF No. 59; *see also* Resp'ts' Mem. of Law in Supp. of Their Rule 72 Objs. to and Mot. to Set Aside Magistrate Judge Wang's August 27 Op. & Order on Resp'ts' Mot. to Dismiss or to Transfer the Case to the District of New Jersey ("Resp'ts' Mem."), ECF No. 60). Petitioner opposed the motion on September 20, 2019 (Pet'r's Opp. to Resp'ts' Rule 72 Objs. To Magistrate Judge Wang's Op. & Order Den. Resp'ts' Mot. to Dismiss or Transfer, ECF No. 61). Subsequently, Respondents filed a Reply in support of their objections. (Resp'ts' Reply Mem. of Law in Further Supp. of Their Rule 72 Objs. to and Mot. to Set Aside Magistrate Judge Wang's August 27 Op. & Order on Resp'ts' Mot. to Dismiss or to Transfer the Case to the District of New Jersey ("Resp'ts' Reply"), ECF No. 63.) Respondents' objections are overruled, and Magistrate Judge Wang's Opinion is AFFIRMED.

Also before this Court is Magistrate Judge Wang's August 27, 2019 Report and Recommendation, recommending that this Court grant Petitioner's petition. (Report and Recommendations ("Report"), ECF No. 54, at 20.) Specifically, the Report recommends that this Court order the Government to promptly present the Petitioner for a bond hearing and that the Government bear the burden of demonstrating that Petitioner is a flight risk or danger to the community through clear and convincing evidence. (*Id.*)

Magistrate Judge Wang advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (*Id.* at 20–21.) Respondents filed timely objections on September 24, 2019. (Resp'ts' Objs. to the Magistrate Judge's R. & R. and Recommendation on the Merits of the Habeas Petition ("Resp'ts' Objs."), ECF No. 62.) Petitioner filed responses to these objections on October 8, 2019. (Pet'r's Resp. in Opp. to Resp'ts' Objs. to the Magistrate Judge's R. & R. to Grant the Habeas Pet., ECF No. 66.) Having reviewed

Magistrate Judge Wang's Report, as well as Respondents' objections and Petitioner's responses, this Court ADOPTS the Report in full and overrules Respondent's objections. Accordingly, the petition is GRANTED.

## I. FACTUAL BACKGROUND[1]

### A. The Parties.

Petitioner is a forty-four-year-old lawful permanent resident of the United States. (Pet. ¶ 1.) Petitioner has lived in the United States continuously for almost three decades and is the father of four children who are citizens. (*Id.*) On October 10, 2017, Petitioner was arrested and subsequently detained pursuant to 8 U.S.C. § 1226(c)[2] at the Hudson County Correctional Center ("HCCC"), where he has since remained. (*Id.* ¶¶ 2, 47.) On October 29, 2018, after having been detained for 385 days without a bond hearing, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, requesting an order releasing him on his own recognizance or, alternatively, providing him with a bond hearing before a neutral arbitrator. (*Id.* ¶¶ 4, 106.)

### B. Respondents' Motion to Dismiss or to Transfer.

In his petition, Petitioner names four respondents, each of whom he claims is his "legal custodian," based on their respective responsibilities and controls: (1) Thomas Decker, who Petitioner states is "responsible for administration of the immigration laws and exercises control over all detention and removal operations and determinations for Department of Homeland Security detainees confined within the jurisdiction of the New York Field Office"; (2) James

---

[1] The relevant factual and procedural background is set forth in greater detail in Magistrate Judge Wang's Opinion and is incorporated by reference herein.

[2] Section 1226(c)(1)(B) provides that the Attorney General shall "take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." Petitioner was charged with removability pursuant to § 1227(a)(2)(A)(ii) and § 1227(a)(2)(A)(iii) "based on his convictions under New York Penal Law ('NYPL') § 120.02, Reckless Assault of a Child, and NYPL § 170.20, Criminal Possession of a Forged Instrument." (Pet. ¶ 31.)

3

McHenry, who Petitioner states is "responsible for the administration of the immigration laws and the administration and functioning of the Immigration Courts" and "administering Petitioner's removal and bond proceedings"; (3) Secretary of Homeland Security Kirstjen Nielsen, who Petitioner states was, at the time, "responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103(a)," "supervise[d] Respondent Decker," and was "responsible for the pursuit of Petitioner's detention and removal"; and (4) Attorney General Jefferson B. Sessions, who Petitioner states was, at the time, "responsible for administration of the immigration laws pursuant to 8 U.S.C. § 1103(g)" and "legally responsible for administering Petitioner's removal and bond proceedings and the standards used in those proceedings."[3] (*Id.* ¶¶ 9–12.) Respondents allege that venue is proper only in the District of New Jersey. (Mem. in Supp. at 4.) Respondents argued, primarily citing *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), that Petitioner's "immediate custodian" is the warden of HCCC, and thus, only the District of confinement has jurisdiction over Petitioner's habeas petition. (*Id.* at 12.)

### C. Magistrate Judge Wang's August 27, 2019 Opinion and Order.

Magistrate Judge Wang denied Respondents' motion to dismiss or to transfer, finding that Respondents' motion was nondispositive because it addressed only the question of which court should hear the case, and not "whether a case could proceed in a federal court." (Opinion at 2–5 (quoting *Williams v. Beemiller, Inc.*, 527 F.3d 259, 266 (2d Cir. 2008)).) Magistrate Judge Wang found persuasive Petitioner's evidence, including ICE detainee handbooks and a contract between HCCC and ICE, which she found to suggest that "ICE retains control of the detainees at HCCC

---

[3] Respondents' relevant roles are as follows: Thomas Decker is the Field Office Director of the New York City Field Office for United States Immigration and Customs Enforcement ("ICE"); James McHenry is the Director of the Executive Office for Immigration Review; Kirstjen Nielsen was, at the time, the Secretary of the Department of Homeland Security; and Jefferson B. Sessions was, at the time, the United States Attorney General of the Department of Justice.

4

and asserts sufficient 'immediate, physical day-to-day control' over its detainees." (*Id.* at 9.) Thus, Magistrate Judge Wang found that Respondent Decker, "as the Director of the ICE New York Field office which exercises control over Petitioner's detention," is Petitioner's "immediate custodian" and therefore the proper respondent in this matter under *Padilla*.[4] (*Id.* at 7–9.) Accordingly, Magistrate Judge Wang concluded that venue is proper in this District.

### D. Magistrate Judge Wang's August 27, 2019 Report and Recommendation.

Additionally, Magistrate Judge Wang issued a Report recommending that this Court grant Petitioner's habeas petition. (Report at 20.) Utilizing a multi-factor test first articulated in *Sajous v. Decker*, Magistrate Judge Wang concluded that Petitioner's continued detention without a bond hearing was unreasonable and violated his right to due process. (*Id.* at 11–17 (citing *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *6, 10–11 (S.D.N.Y. May 23, 2018)).) Magistrate Judge Wang explained that the fact that an individual detained pursuant to § 1226(c) *may* pose a risk of flight or danger to the community after prolonged detention does not diminish his or her due process right to "have his particular case evaluated to determine if he poses a risk of flight or danger." (*Id.* at 17 (citing *Demore v. Kim*, 538 U.S. 510, 532 (2003) (Kennedy, J., concurring)).) Therefore, Magistrate Judge Wang recommended granting Petitioner's habeas petition "to the extent that the Government be ordered to promptly present Mr. Cruz before an immigration judge for a bond hearing," and that the Government bear the burden of demonstrating that Petitioner is a flight risk or danger to the community through clear and convincing evidence. (*Id.* at 20.)

---

[4] It is not clear whether Magistrate Judge Wang found that only Respondent Decker was Petitioner's "immediate custodian" or if she intended to refer to all Respondents in her Opinion. Regardless, for the reasons stated herein, the determination that venue is proper in this District would remain the same in either case.

5

## II. LEGAL STANDARD

"Although a magistrate may hear dispositive pretrial motions, [s]he may only submit proposed findings of fact and recommendations for disposition of the matter." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). The district court must review *de novo* the portions of a magistrate judge's report and recommendation to which a party properly objects. 28 U.S.C. § 636(b)(1)(C). However, the district court need not conduct a *de novo* hearing on the matter. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Instead, it is sufficient that the district court "arrive at its own, independent conclusion" regarding those portions of the report to which objections are made. *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (citation omitted).

Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citations omitted). The clear error standard also applies if a party's "objections are improper—because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate judge.'" *Stone v. Comm'r of Soc. Sec.*, No. 17 Civ. 569 (RJS), 2018 WL 1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (citation omitted). Clear error is present when "upon review of the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted). "A magistrate's ruling is contrary to law if it 'fail[s] to apply or misapplies relevant statutes, case law, or rules of procedure[.]'" *Thai Lao Lignite (Thai.) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) (first alteration in original) (citation omitted).

For "nondispositive pretrial matters," however, the "magistrate . . . may issue orders." *Thomas E. Hoar*, 900 F.2d at 525. "The district court reviews such orders under the 'clearly

erroneous or contrary to law' standard." *Id.* (citing § 636(b)(1)(A); Fed. R. Civ. P. 72(a)). "[M]agistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." *Winfield v. City of New York*, No. 15 Civ. 5236 (LTS), 2017 WL 5054727, at *2 (S.D.N.Y. Nov. 2, 2017) (alteration in original) (citation omitted). "[A] party seeking to overturn a magistrate judge's decision thus carries a heavy burden." *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.*, No. 04 Civ. 6189 (JFK), 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007).

## III. THE RULING ON PETITIONERS' MOTION TO DISMISS OR TRANSFER WAS NOT DISPOSITIVE

As an initial matter, this Court must determine whether rulings on motions to dismiss or transfer in immigration habeas petitions, such as Magistrate Judge Wang's Opinion here, are dispositive. The Second Circuit considers an issue dispositive if it "determine[s] the fundamental question of whether a case could proceed in a federal court." *Williams*, 527 F.3d at 266 (quoting *In re U.S. Healthcare*, 159 F.3d 142, 146 (3d Cir. 1998)); *see also Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 92 (S.D.N.Y. 2002) ("A ruling is 'dispositive' if it resolves substantive claims for relief rather than mere issues in the litigation." (citation omitted)). This question hinges on whether Respondents' motion constitutes a motion "to involuntarily dismiss an action" under 28 U.S.C. § 636(b)(1)(A). Magistrate Judge Wang determined that the "immediate custodian rule is a venue rule," which courts have found to be nondispositive. (Order at 4–5 (quoting *Mahmood v. Nielsen*, 312 F.Supp.3d 417, 423 (S.D.N.Y. 2018)).) Respondents object to this determination and argue that their motion raises a dispositive issue and that a magistrate judge therefore has the authority to issue only a report and recommendation on the matter. (Resp'ts' Mem. at 7 (citing 28 U.S.C. § 636(b)(1)(A)).)

7

Both parties in this case agree that Respondents' motion raises a single issue: whether the Southern District of New York is the proper location to hear Petitioner's petition. The Supreme Court in *Padilla* emphasized that jurisdiction in the habeas context is different from subject-matter jurisdiction. *See Padilla*, 542 U.S. at 434 n.7; *see also id.* at 451 (Kennedy, J., concurring) ("[T]he question of the proper location for a habeas petition is best understood as a question of *personal jurisdiction* or *venue*." (emphasis added)); (Opinion at 4 (collecting cases in which courts found that *Padilla*'s "immediate custodian rule is a venue rule").) Accordingly, the question of where immigration habeas petitions should be filed is analogous to questions of venue and personal jurisdiction.

A dismissal or transfer of this case would not preclude Petitioner from refiling his case or constitute a ruling on the merits. *See* Fed. R. Civ. P. 41(b) (noting that a dismissal under subdivision (b) constitutes an adjudication on the merits, unless the dismissal is for lack of personal jurisdiction, improper venue, or failure to join a party). Put another way, although Respondents frame their motion as one for dismissal, the motion does not address "the fundamental question of whether a case could proceed in a federal court" and should thus be treated as nondispositive, like other venue motions. *Williams*, 527 F.3d at 266 (quoting *In re U.S. Healthcare*, 159 F.3d at 146). Magistrate Judge Wang thus properly decided Respondents' application in an Opinion and Order rather than in a Report and Recommendation. Therefore, the appropriate standard of review is clear error.

## IV. THE OPINION IS AFFIRMED[5]

Magistrate Judge Wang's Opinion is not clearly erroneous or contrary to law. At the outset, an assessment of clear error is highly deferential, and such error may be found only if a magistrate judge abused her discretion or applied the law incorrectly. *See Winfield*, 2017 WL 5054727, at *2. Magistrate Judge Wang did not misapply relevant statutes or case law in deciding that Respondent Decker, Director of ICE New York, is Petitioner's immediate custodian, *see Thai Lao Lignite*, 924 F. Supp. 2d at 512, and Respondents acknowledge that decisions from other judges in this District are in line with Magistrate Judge Wang's, (*see* Resp'ts' Mem. at 18–19 (collecting cases)).

Under *Padilla*, a district court deciding the proper jurisdiction pursuant to a habeas statute should first identify the proper respondent and then, after making this determination, ask whether it has jurisdiction over him or her. *Padilla*, 542 U.S. at 434. Pursuant to 28 U.S.C. § 2242, the proper respondent to a habeas petition is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242. In *Padilla*, the Supreme Court interpreted this to mean that the proper respondent in habeas petitions raising "core challenges," that is, challenges regarding the physical detention of an individual, is the "person who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge." *Padilla*, 542 U.S. at 435

---

[5] At the outset, it bears mentioning that this Court and others have previously held that jurisdiction over habeas petitions such as the present one lies in the district of confinement. *See Lemus-Pineda v. Whittaker*, 354 F. Supp. 3d 473 (S.D.N.Y. 2018) (applying *Padilla*'s immediate custodian rule to an immigration habeas petition); *Allen v. Holder*, No. 10 Civ. 2512 (GBD) (JLC), 2011 WL 70558 (S.D.N.Y. Jan. 4, 2011) (final order) (adopting a Report and Recommendation that concluded that jurisdiction was proper in the District of New Jersey, where the petitioner was detained); *Zhen Yi Guo v. Napolitano*, No. 9 Civ. 3023 (PGG), 2009 WL 2840400, at *3 (S.D.N.Y. Sept. 2, 2009) (collecting cases); *Catellanos v. Mukasey*, No. 8 Civ. 2583, 2008 WL 4185700, at *3–4 (E.D.N.Y. Sept. 8, 2008) (applying *Padilla*'s immediate custodian rule to a core habeas petition). Still, considering the factual differences squarely presented in the immediate case, this Court finds that Magistrate Judge Wang's Opinion is not clearly erroneous.

(emphasis in original) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)).[6] The Supreme Court further found that the "default rule" is that this would typically be the warden at the facility where the petitioner is being held. *Id.*

While the location of a detainee at the time a petition is filed is certainly relevant to the determination as to who is the proper custodian, this Court must consider the fact that despite the "default rule" outlined in *Padilla*, both the Supreme Court and Second Circuit have left open the question of the proper custodian within habeas appeals in the immigration context. *See, e.g., Padilla* at 435 n.8 (declining to resolve the question of the proper respondent in a habeas petition); *Henderson v. I.N.S.*, 157 F.3d 106, 122, 126 (2d Cir. 1998) (citation omitted) (noting that the Attorney General plays an "extraordinary and pervasive role" in immigration matters, including possessing "complete discretion to decide whether or not removal shall be directed," but ultimately declining to decide whether the Attorney General could be named as custodian in these cases). In fact, even when the Second Circuit suggested a preference for applying the immediate custodian rule to immigration habeas petitions, it did so cursorily in a footnote of a summary order without explaining its reasoning. *See Arevalo-Guasco v. Dubois*, No. 18 Civ. 2184, 2019 WL 4419380, at *1 n.1 (2d Cir. Sept. 17, 2019) (summary order).

Respondents argue that the Second Circuit's statement in *Arevalo-Guasco*, that "the key is where [the petitioner] was detained when he filed his [habeas] petition," indicates that Petitioner's presence in New Jersey when he filed his habeas petition is "the key relevant fact for establishing that venue/jurisdiction is proper only in the District of New Jersey." (Resp'ts' Reply at 3–4

---

[6] By comparison, a habeas petitioner making non-core challenges—that is, "challeng[ing] something other than his present physical confinement"—may "name as respondent the entity or person who exercises legal control with respect to the challenged 'custody.'" *Padilla*, 542 U.S. at 438.

(quoting *id.* at \*1 n.1).) The *Arevalo-Guasco* case, in turn, cites to *Padilla* and *Henderson*, which Respondents argue support their argument that the location of detention is the proper venue.

Nevertheless, as Magistrate Judge Wang explained in her Opinion, both *Padilla* and *Henderson* are consistent with her findings because they never conclusively addressed the question of the proper custodian within the realm of immigration matters. For example, although the Second Circuit analyzed the issue at length, it ultimately declined to create a bright-line rule on the issue, instead finding that the proper respondent in a habeas suit "depends primarily on who has power over the petitioner and . . . on the convenience of the parties and the court." *Henderson*, 157 F.3d at 122. Similarly, in *Padilla*, despite applying the "default rule" that the proper respondent is the warden at the detention facility, the Supreme Court joined the Second Circuit in expressly "declin[ing] to resolve" who is the proper respondent. *Padilla*, 542 U.S. at 435, n.8. Magistrate Judge Wang, therefore, did not err in concluding that "the additional evidence proffered by Petitioner supports a finding that ICE, whether solely or in conjunction with the warden, exercises [physical day-to-day] control to an extent that satisfies the immediate custodian rule under *Padilla*." (Opinion at 7.)

Indeed, the factual record considered by Magistrate Judge Wang supports a finding that ICE is Petitioner's custodian. In concluding that ICE has a "much more involved role than purely legal custody" (*id.*), Magistrate Judge Wang relied primarily on an ICE detainee handbook approved by Respondent Decker, which informed detainees that they were in ICE custody, that ICE officers would be physically present in the housing units "at least a few days per week," and that ICE had to determine work eligibility for detainees who sought "to perform tasks associated with the operation of the facility." (*Id.* at 7–9 (citation omitted).) Additionally, Magistrate Judge Wang observed that although the sexual assault policy included in the ICE Handbook allowed

11

detainees to report to HCC staff, it also required that "'ICE and/or appropriate law enforcement agency [sic]' [] be notified and [] conduct an investigation." (*Id.* at 9 (first alteration in original) (citation omitted).) Based on these facts, Magistrate Judge Wang determined that Respondent Decker, as "Director of the ICE New York Field office which exercises control over Petitioner's detention," is the proper respondent. [7, 8] (*Id.*)

After carefully reviewing the Opinion, this Court finds that Magistrate Judge Wang did not abuse her discretion and that her Opinion is not clearly erroneous or contrary to law.[9]

## V. THE REPORT AND RECCOMENDATION IS ADOPTED

### A. Based on the Principles of Due Process, the Report Properly Concluded that Petitioner's Petition Should Be Granted.

Under 28 U.S.C. § 2241(c)(3), a district court may grant a writ of habeas corpus to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." (Report at 6

---

[7] It bears mentioning that although Thomas Decker is the Director of the ICE New York Field Office and not the New Jersey Field Office, the Department of Homeland Security has reported instances where the Director of the New York Field Office has exercised his power in the state of New Jersey, including by directing for the arrest and detention of individuals committing crimes while located in the state of New Jersey. *See, e.g., ICE Arrests 123 in New Jersey During Nationwide Operation Targeting Aliens with Prior Arrests or Convictions for Driving Under the Influence of Alcohol or Drugs*, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (Apr. 8, 2019), https://www.ice.gov/news/releases/ice-arrests-123-new-jersey-during-nationwide-operation-targeting-aliens-prior-arrests.

[8] In addition to the evidence demonstrating that Respondents played a pervasive role in Petitioner's detention in New Jersey, there are also factors demonstrating that at the time of his arrest, Petitioner had strong personal ties to the State of New York. For example, prior to his arrest, Petitioner worked in Long Island, New York, and each of his four children were born in New York. (Pet. ¶¶ 23, 27.) Regarding his arrest, Petitioner was booked in Central Islip, New York and was initially detailed in the NYC Field Office, at 201 Varick Street in New York, before being transferred to HCCC in New Jersey. (Pet. Ex. H (ICE Detention Details Form), ECF No. 2-8.) Moreover, all of Petitioner's immigration hearings have taken place in New York state, primarily at the Varick Street Immigration Court, and all immigration records associated with Petitioner's detention and removal case are housed in the state of New York. (Pet'r's Opp'n to Resp'ts' Mot. to Dismiss or Transfer Venue, ECF No. 12, at 7.)

[9] It is worth noting that this Court would land at the same determination as to the proper respondent in this case even had Magistrate Judge Wang written a Report & Recommendation on the matter and this Court analyzed her decision *de novo*.

12

(quoting 28 U.S.C. §§ 2241(a), (c)(3)).) "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Therefore, Petitioner, a non-citizen in a removal proceeding, is entitled to due process. To obtain a writ of habeas corpus, the petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997) (citing *Machado v. Commanding Officer*, 860 F.2d 542, 544 (2d Cir. 1988)).

The Report provides a thorough review of the case law governing the issues in this case. For example, Magistrate Judge Wang focuses on *Demore v. Kim*, wherein the Supreme Court considered a facial challenge to the constitutionality of § 1226 and found that instead of being "indefinite" and "potentially permanent," as can be the case under post-removal-period detention, detention under § 1226 "is of a much shorter duration." *Demore*, 538 U.S. at 528 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690–91 (2001)). In its analysis, the Supreme Court gave considerable weight to the Government's argument that removal proceedings, without appeal, are completed in fewer days than what it "considered presumptively valid in *Zadvydas* [*i.e.*, ninety days]." *Id.* at 529; (*see also* Report at 7 (citing *id.*)).

Moreover, the Report considered the fact that the Supreme Court previously rejected a bright line rule requiring bond hearings after six months. (Report at 7–8 (citing *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018).) In light of *Jennings*, the Supreme Court also reversed the Second Circuit's reading of temporal limitations into the text of § 1226(c). *Shanahan v. Lora*, 138 S. Ct. 1260 (2018) (vacating *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015)). Magistrate Judge Wang, however, correctly found that the question of whether the text of § 1226(c) contains a statutory detention limit is distinct from the question of "whether the Due Process Clause requires a constitutional limit." (Report at 8–9 (citing *Guerrero-Sanchez v. Warden York Cty. Prison*, 905

F.3d 208, 217 n.6 (3d Cir. 2018)).) Indeed, courts in the Second Circuit have continued to rely on *Lora*, and have enforced limitations on the duration of detention under § 1226(c), based on the principles of due process. (*See id.* at 9 (collecting cases finding that *Lora*'s due process analysis remains persuasive).)

The Report also outlines case law in this District prior to the Second Circuit's decision in *Lora*, noting that while the court in *Young v. Aviles* initially found detention of seven months without a bond to be a "close call," (*id.* at 10 (citing *Young v. Aviles*, 99 F. Supp. 3d 443, 455 (S.D.N.Y. 2015))), it eventually found that the petitioner's detention of 11 months, four months later, violated due process, (*id.* (citing *Young v. Aviles*, No. 15-CV-4545 (JMF), 2015 WL 4579204, at *2 (S.D.N.Y. July 29, 2015))). *Lora*'s bright line rule aimed to provide the "predictability" and "certainty" to the due process inquiry that was missing in *Young*. (*Id.* (citing *Lora*, 804 F.3d at 616).) Magistrate Judge Wang correctly observed that, after *Lora*'s reversal, courts in this District have "overwhelmingly adopted" a multi-factor test, as first articulated in *Sajous v. Decker*, that combines the "principles elucidated in *Lora*, *Zadvydas*, and *Denmore* to craft a fact-dependent inquiry into when § 1226(c) detention becomes unreasonable." (*Id.* at 11 (collecting cases and quoting *Sajous*, 2018 WL 2357266, at *6; *Dukuray v. Decker*, No. 18 CV 2898 (VB), 2018 WL 5292130, at *3–4 (S.D.N.Y. Oct. 25, 2018)).) The Report correctly summarized the factors considered in the *Sajous* test as follows:

> (1) the length of detention, (2) the extent the petitioner is responsible for the delay, (3) whether the petitioner asserted defenses to his removal, (4) whether the immigration detention exceeded the time spent in prison for the underlying criminal offense(s), and (5) whether the immigration detention facility is "meaningfully different from a penal institution for criminal detention."

(Report at 10–11 (quoting *Sajous*, 2018 WL 2357266, at *10–11).) Additionally, Magistrate Judge Wang properly concluded that the factors articulated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), are not appropriate in this context. (Report at 11–12 (noting that the deprivation of

14

monetary benefits does not "rise[] to the same level of deprivation as prolonged detention without a bond hearing").)

In applying this precedent, Magistrate Judge Wang correctly found that Petitioner's continued detention without receiving an initial bond hearing is unreasonable. This Court agrees that the length of Petitioner's detention—nearly two years without a bond hearing—substantially "exceeds [that which] courts have already held to be unconstitutionally unreasonable." (*Id.* at 12–13 (collecting cases).) Respondents reference two adjournments and five continuances made by the immigration court at Petitioner's request, causing a total delay of approximately six and a half months,[10] and contend that the delay in these proceedings is due to Petitioner's own actions (Resp'ts' Objs. at 2–6); however, it would be improper to hold these delays against Petitioner, as they resulted from events outside of his control or reflected an appropriate use of the forms of relief available to him. (*See, e.g., id.* at 13–14 (explaining that this case was delayed because the hospital refused to comply with Petitioner's subpoena, despite his multiple requests).) Moreover, even if this Court found that the six-and-a-half-month delay was Petitioner's fault, it still would not explain away the remaining approximately year and a half that Petitioner has been detained. Notably, while Respondents point to *Demore* in their objections to support their argument that there is no requirement for a bond hearing despite a long delay, they themselves state that the proceedings in that case were delayed "largely as a result of the alien's own actions." (Resp'ts' Objs. at 13.) Although Respondents argue that Magistrate Judge Wang did not "acknowledge the choices that [Petitioner] made throughout his case to challenge his removal or appreciate the impact that has had on the duration of [Petitioner's] proceedings," (*id.* at 21), Magistrate Judge

---

[10] This calculation does not take into account delays that Respondents do not attribute to Petitioner.

15

Wang did not err in finding that a petitioner should not be punished for pursuing routes of relief to which he or she is entitled, including by requesting adjournments for any number of reasons.[11]

Moreover, the Report correctly observed that Petitioner asserts legitimate defenses to removal, evidenced by the immigration court's initial decision to cancel his removal. (Report at 14–15 (explaining that asserting legitimate defenses "'diminishes the ultimate purpose of detaining the Petitioner' as it removes a presumption of immediate deportation" (quoting *Sajous*, 2018 WL 2357266, at *11)).) Finally, the Report correctly noted that Petitioner has been detained longer than he was during his incarceration for his two prior criminal offenses and under conditions similar to those he experienced when detained for those crimes. (*Id.* at 15.)

Based on the foregoing and taking into account all of the relevant considerations analyzed by Magistrate Judge Wang, this Court agrees with Magistrate Judge Wang that Petitioner's continued detention does not conform with the requirements of due process.

**B. The Report Properly Outlined the Correct Procedure at a Bond Hearing.**

In addition, Magistrate Judge Wang correctly found that at the bond hearing, the Government should carry the burden of proving that Petitioner is a flight risk or danger to the community by clear and convincing evidence. (*Id.* at 18.) Respondents contend that the bond hearing should be governed by "existing agency precedent." (Resp'ts' Mem. of Law in Opp. to the Pet. for a Writ of Habeas Corpus, ECF No. 33, at 29 n.8 (noting that in *Jennings* the Court "explicitly reversed the imposition of the addition procedural requirements to bond hearings under § 1226(a)").) However, the Report properly distinguishes Petitioner's bond hearing, which is being held to remedy a due process violation, from that of the Petitioner in *Jennings*, who claimed

---

[11] Notably, this case does not present the question of whether Petitioner should be removed from the United States, but rather, whether continuing to detain him while he awaits a hearing on the matter violates due process. These two questions require different analyses, and it would be improper to find that the latter hinges on whether Petitioner has moved for adjournments of proceedings.

16

the hearing was necessary under § 1226(a). It is persuasive that many courts in this District have required the Government to meet the clear and convincing standard in a due process analysis. (Report at 19 (collecting cases).) This approach is essential in protecting Petitioner's liberty interests and thus should be required of the Government at his bail hearing. (*Id.* ("[T]he Government should bear the burden of proof by clear and convincing evidence that [Petitioner] is not entitled to bail.").)

## VI. CONCLUSION

Respondents' objections to Magistrate Judge Wang's Opinion, (ECF No. 53), are OVERRULED and Magistrate Judge Wang's Opinion is AFFIRMED. Additionally, Respondents' objections to Magistrate Judge Wang's Report are DENIED, and Magistrate Judge Wang's Report, (ECF No. 54), is ADOPTED.

Dated: New York, New York
November 26, 2019

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge